UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEREMY DEAN WILKINSON, #47239,<br><br>        Plaintiff,<br><br>vs.<br><br>CENTURION MEDICAL; JOSH TEWALT; WARDEN ROSS; HSA MARY STONER; DON BREWER; and DR. WILKES,<br><br>        Defendants. | Case No. 1: 24-cv-00334-AKB<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Complaint of Plaintiff Jeremy Wilkinson, an Idaho Department of Correction (IDOC) prisoner, was conditionally filed by the Clerk of Court. (Dkt. 3). A "conditional filing" means Plaintiff must obtain authorization from the Court to proceed. All prisoner and pauper complaints seeking relief against a government entity or official must be screened by the Court. 28 U.S.C. §§ 1915 & 1915A. The Court must dismiss any claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Plaintiff requests permanent injunctive relief and monetary damages from prison officials, medical personnel, and Centurion (the private medical provider contracted to the state of Idaho to provide medical care to prisoners). Plaintiff has also filed a request for preliminary injunctive relief. (Dkt. 6). Because some of Plaintiff's claims have no factual support or no proper legal basis, he will be permitted to proceed in part, as explained below.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 1**

## REVIEW OF COMPLAINT

### 1.  Standard of Law

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs are required to state facts, and not just legal theories, in a complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To state an Eighth Amendment claim for lack of adequate prison medical care, a complaint must contain facts alleging that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (Thomas, J. dissenting) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to

medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05.

### 2. Claims upon which Plaintiff May Proceed

Plaintiff asserts that prison medical providers have failed to provide him with adequate treatment for loss of vision in his left eye, which is an especially serious problem because Plaintiff has a prosthetic right eye. Complete loss of vision in his left eye would render him blind. He also asserts that he has pain in his head, neck, ear, left eye, and behind his left eye that has been inadequately treated.

#### A. *Defendant Mary Stoner*

Plaintiff asserts that Centurion Health Services Administrator (HSA) Mary Stoner knew he was at risk of losing vision in his remaining eye, but that she scheduled him for five off-site visits with the same neuro-ophthalmologist, knowing that doctor refused to see him. Stoner's response to Plaintiff's grievance is that she could not find a different neuro-ophthalmologist who would agree to see him. The primary question is the extent to which Stone attempted to find a substitute specialist for Plaintiff. If her efforts were constitutionally adequate, then the secondary question becomes what is required to secure constitutionally-adequate care for Plaintiff's left eye in the absence of a local neuro-ophthalmologist examination, e.g., transferring Plaintiff to an out-of-state prison or scheduling care from a different type of specialist in Idaho?

The Court will require Stoner to respond to the Complaint and Motion for Preliminary Injunctive Relief.

#### B. *Defendant Dr. Kate Wilks*

Dr. Kate Wilks is the state medical director and the ultimate medical decisionmaker for the prison facility where Plaintiff resides. (Dkt. 3 at 16). Plaintiff alleges he has spoken many times to Dr. Wilks about his urgent condition; in addition, IDOC administrator Rona Siegert has notified

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 3**

Dr. Wilks of Plaintiff's problems through the prison grievance investigative procedures, but Dr. Wilks has ignored Plaintiff's serious health needs. Plaintiff may proceed against Dr. Wilks in her individual capacity.

### C. *Defendant Gen Brewer*

Gen Brewer is the Centurion Director of Nursing (DON). Plaintiff alleges that, when he reported to Brewer that Plaintiff had been scheduled to see the same specialist five times, even though the specialist refused to treat him, Brewer told Plaintiff that it was simply a scheduler's error, but Brewer did nothing to correct the recurring error and ensure that Plaintiff was scheduled properly. Plaintiff may proceed against Brewer in her individual capacity. However, to proceed past summary judgment, Plaintiff will be required to present facts that Brewer actually drew an inference that a substantial risk of harm existed because of the eye specialist scheduling errors, and yet Brewer chose to do nothing.

### 3.   Claims Upon Which Plaintiff May Not Procced

### A. *Claims Against  Centurion*

To bring a § 1983 claim against a private entity performing a government function, a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); *see also Tsao v. Desert Palace, Inc*., 698 F.3d 1128, 1138-39 (9th Cir. 2012) (*Monell* applicable to private entities performing government functions). That is, "[an entity] can be found liable under § 1983 only where the [entity] itself causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Under *Monell*, requisite elements of a § 1983 claim against a private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to the

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 4**

plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

Plaintiff has provided insufficient allegations to state a claim against Centurion. Plaintiff alleges that Centurion has policies or customs in place to willfully delay or deny expensive medical treatment to inmates and to understaff the prison medical unit to save costs. The facts alleged to support this cause of action are as follows: Plaintiff has submitted many requests for treatment for his rapidly-diminishing eyesight and constant pain; Plaintiff had to wait months to see a medical provider; Plaintiff was seen by physician's assistants instead of medical doctors; when Plaintiff is seen by a medical doctor, the doctor is unfamiliar with his medical history because the doctors are all "recently hired"; if Plaintiff receives a diagnosis and plan of care, it is immediately overruled by Centurion's top administrators, causing Plaintiff to have to begin the process again. (Dkt. 3 at 5-6.)

Plaintiff's speculative allegations do not show that Centurion has a policy to delay medical treatment to inmates or understaff the medical unit to save money. Plaintiff's own experience does not show a policy or custom. His own experience may have been caused by the mere or gross negligence of a scheduler or medical provider, or by the deliberate indifference of individuals, acting in the absence of a policy or custom.

Without more, Plaintiff's allegations tend to show only that Centurion, like any other similar health care business, encourages its medical providers to try conservative treatment methods before ordering more expensive and invasive methods. This is the same means of resource management (cutting costs and maximizing profits) that insurance companies in the health care industry use; without a theory and practice of careful resource management, there would be no

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 5**

health insurance companies. Individuals in regular society usually are required to demonstrate that they have tried conservative treatments before doctors prescribe, and insurance companies pay for, more expensive and invasive treatments. Plaintiff's current allegations are insufficient to show that Centurion administrators regularly require providers to forgo prescribing necessary treatment that it considers too costly.

Should Plaintiff discover additional facts during the disclosure and discovery phase of litigation to show that Centurion, in fact, had policies, customs, or practices that reflect a standard of subjective deliberate indifference, Plaintiff may file a motion to amend the Complaint, together with a proposed amended complaint.

Any policy-based amended claim must clearly set forth causation. An official's wrongful act or omission does not mean that the entity has a policy requiring that act or omission. The official's action might be *consistent* with such a policy, but mere consistency is not enough to state a claim under § 1983. *Twombly*, 550 U.S. at 557 (holding that where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitle[ment] to relief'").

### B.  *Claims against Non-Treating Defendants*

Plaintiff asserts that he sent a Resident Concern Form to Warden Ross, who replied that he had forwarded Plaintiff's concerns to the Centurion Health Services Administrator (HSA). (Dkt. 3 at 9). This response shows that Ross took an action to address Plaintiff's medical issue and does not show deliberate indifference.[1]

---

[1]     Plaintiff has not provided a copy of this concern form as an exhibit, although he provides his other concern forms and grievances.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 6**

Importantly, Plaintiff does not allege that, *after* Warden Ross's message to the HAS, Plaintiff reported to Ross that the HSA did not act on the forwarded concern and that the urgent medical issue still existed. Even if Plaintiff had reported this to Ross in a new concern form or grievance, he must show that Ross himself read and ignored it. Many concern forms sent to high-level officials are often reviewed and answered by lower level officials. Plaintiff may request amendment before the amendment deadline (set forth below) if he discovers facts that would support individual liability.

Similarly, Plaintiff's claims against IDOC director Josh Tewalt are based on the allegation that "Tewalt has received what Plaintiff can only guess to be Hundreds of Prisoner's and their Family's and Friend's Complaints about the Willful Delays and Denials of Adequate Medical Treatments for the prisoners under his custody and care . . . . " (Dkt. 3 at 7). These allegations are speculative and not based in fact. Plaintiff may later amend if he discovers facts that would support individual liability.

### C.  *Non-Cognizable Claims and Requests for Relief*

Plaintiff also brings several claims that are not cognizable in a civil action, have no factual basis, or are improper requests for relief. He may not proceed on any of the following: (1) that a federal criminal cause of action under 18 U.S.C. §§ 4, 241, or 242 can be pursued in a civil rights action; (2) that a "formal criminal investigation" should be initiated on the facts alleged in the Complaint (Dkt. 3 at 2, 8); (3) that the Court can "cancel" the contract between Centurion and IDOC (*id*. at 8); or (4) that the Court can order the IDOC to terminate the individual defendants' employment and cause them to forfeit their pensions (*see id*. at 15). These claims and requests for relief will be dismissed.

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 7**

### 4. Motion for Preliminary Injunctive Relief

Issuance of a temporary restraining order or preliminary injunction is appropriate where a plaintiff can show (1) there are "serious questions going to the merits," (2) there is a "a balance of hardships that tips sharply towards the plaintiff," (3) "there is a likelihood of irreparable injury," and (4) "the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131, 1135 (9th Cir. 2011). Preliminary injunctive relief is appropriate only if "the facts and law clearly favor the moving party." *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994).

Plaintiff requests that the Court order Defendants to accelerate treatment of his left eye. He asserts, without adequate foundation, that, without urgent treatment, he will go blind. Because this is a serious medical issue and Plaintiff is a pro se prisoner, the Court will liberally construe these allegations to state an urgent claim and require Defendants to respond to the request for preliminary injunctive relief before filing an answer to the Complaint.

Plaintiff has attached many copies of Resident Concern Forms to his motion, showing that he has made many requests for medical care. Most of the copies are too light to read. Many of the forms appear unrelated to the request for preliminary injunctive relief—which is confined to the eye issue. Requests about miscellaneous sinus, hip, and other pain issues, only some of which are very briefly and vaguely set forth in the Complaint, do not relate to the subject matter of the motion for preliminary injunctive relief.

### 5. Conclusion

Plaintiff may proceed on Eighth Amendment medical deliberate indifference claims against Stoner, Brewer, and Wilkes in their individual capacities for damages and in their official capacities for injunctive relief. He may not proceed on any other claims against any other

defendants at this time. He will not be permitted to proceed in forma pauperis at this time but rather will be required to pay the filing fee.

This Order does not guarantee that any of Plaintiff's claims will be successful; it merely finds that one or more is colorable, meaning that the claims will not be summarily dismissed at this stage. This Order is not intended to be a final or a comprehensive analysis of Plaintiff's claims, but it is only a determination that one or more of Plaintiff's claims is plausible and should proceed to the next stage of litigation.

## ORDER

**IT IS ORDERED:**

1.   Plaintiff may proceed on his Eighth Amendment claims against Mary Stoner, Gen Brewer, and Dr. Kate Wilks. All other claims against all other Defendants are DISMISSED, and all other Defendants are TERMINATED as parties to this action. If Plaintiff later discovers facts sufficient to support a claim that has been dismissed, Plaintiff may move to amend the complaint to assert such claims.[2]

2.   Plaintiff's Application for in Forma Pauperis Status (Dkt. 1) is DENIED. Plaintiff states, under penalty of perjury, that he has not received any money from family members in the past six months. (Dkt. 1 at 1-2). Contrarily, Plaintiff's prison trust account statement shows that he regularly receives money from Debra Wilkinson and Susan Wilkinson. At the time he requested his account statement, he had $769.77 in his prison trust account, from which he should be able to pay the filing

---

[2]      Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend.").

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 9**

fee, because all of his necessities of life are provided to him in prison. (*See* Dkt. 2).
Within 30 days after entry of this Order, Plaintiff must pay the filing fee of $405 to
the Clerk of Court, or his case will be dismissed without prejudice.

3.      Because Plaintiff is not proceeding in forma pauperis, he is ultimately responsible
to effect service upon Defendants if they do not return the waiver. The Clerk of
Court will first attempt the waiver process, which is designed to save the costs of
service. If Defendants do not waive service, however, then Plaintiff will be
instructed on how to notify each Defendant of the responsibility to waive service
or be subject to reimbursing Plaintiff for any formal service fees.

4.      Therefore, Defendants are permitted to waive service of summons by executing, or
having their counsel execute, the Waiver of Service of Summons as provided by
Fed. R. Civ. P. 4(d) and returning it to the Court within 30 days after entry of this
Order. If Defendants choose to return the Waiver of Service of Summons, the
answer or pre-answer motion will be due in accordance with Rule 12(a)(1)(A)(ii);
however, **the response to the Motion for Preliminary Injunctive Relief shall be
due within 45 days after entry of this Order**. Accordingly, the Clerk of Court
will forward a copy of the Complaint (Dkt. 3), a copy of this Order, a copy of the
Motion for Preliminary Injunctive Relief (Dkt. 6), and a Waiver of Service of
Summons to the following counsel, and the **Clerk of Court shall particularly note
in the email to counsel that, if the waiver is executed and returned, the
response to the Motion for Preliminary Injunctive Relief is due before the
answer, within 45 day after entry of this Order**:

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 10**

Aynsley Harrow Mull, Associate General Counsel for Centurion, at Ms. Mull's email address on file with the Court, on behalf of Defendants Mary Stoner, Gen Brewer, and Dr. Kate Wilks.

5.  The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6.  Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

7.  Dispositive motions must be filed no later than 300 days after entry of this Order.

8.  Each party must ensure that all documents filed with the Court are simultaneously served upon the opposing party (through counsel if the party has counsel) by first-class mail or via the CM/ECF system, pursuant to Federal Rule of Civil Procedure 5. Each party must sign and attach a proper mailing certificate to each document filed with the court, showing the manner of service, date of service, address of service, and name of person upon whom service was made.

9.  The Court will not consider ex parte requests unless a motion may be heard ex parte according to the rules, and the motion is clearly identified as requesting an ex parte order, pursuant to Local Rule of Civil Practice before the United States District Court for the District of Idaho 7.2. ("Ex parte" means that a party has provided a document to the court, but that

**INITIAL REVIEW ORDER BY SCREENING JUDGE - 11**

the party did not provide a copy of the document to the other party to the litigation.)

10. No party may have more than three pending motions before the Court at one time, and no party may file a motion on a particular subject matter if that party has another motion on the same subject matter currently pending before the Court. Motions submitted in violation of this Order may be stricken, summarily denied, or returned to the moving party unfiled.

11. Plaintiff must notify the Court immediately if Plaintiff's address changes. Failure to do so may be cause for dismissal of this case without further notice.

DATED: August 29, 2024

Amanda K. Brailsford
U.S. District Court Judge